# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION
# Case No.1:24-cv-24404

| | |
|---|---|
| **KELLER NORTH AMERICA, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **FRANK FONSECA,** | ) |
| | ) |
| Serve: | ) |
| 6901 SW 96th Street | ) |
| Pinecrest, FL 33156 | ) |
| | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Keller North America, Inc. ("Keller"), by and through counsel, for its Verified Complaint for Injunctive Relief and Damages against Defendant Frank Fonseca ("Fonseca"), states and alleges as follows:

### NATURE OF THIS ACTION

1. Keller is a geotechnical specialist contractor that works with its clients to address their geotechnical challenges across the United States and worldwide. To that end, Keller maintains a team of highly trained engineers, project managers, and business developers who have a wealth of experience and provide a wide range of geotechnical techniques and optimum solutions to clients.

2. Fonseca was formerly employed by Keller and worked for the company for nearly twenty-five years, holding integral leadership positions with the company, including most recently as Senior Vice President, and overseeing Keller's operations in Florida.

3. As a result of his high-level role with Keller, Fonseca had access to Keller's confidential and proprietary information relating to Keller's business plans, strategies, operations, productivity, customers, and financial performance and projections, and he was positioned to divert other members of Keller's workforce, along with Keller's intellectual property and business relationships, away from the company.

4. Fonseca unexpectedly resigned his employment with Keller on or about September 27, 2024, to work for Keller's direct competitor, Berkel & Company Contractors, Inc. ("Berkel"), in the same market area doing the same or substantially similar job for Berkel as he did for Keller.

5. Keller recently learned that not only is Fonseca working for a competing company, but he has also spearheaded an effort to solicit current Keller employees across the country – including the bulk of his business unit and co-workers in Keller's Florida Region – in an attempt to persuade Keller's employees to leave their employment with Keller to work for Berkel or otherwise interfere with Keller's economic relations with the employees.  These efforts started *before* Fonseca's employment with Keller ended.

6. Fonseca has been successful in this endeavor, with at least four Keller employees from Fonseca's former business unit defecting to Berkel.

7. Consequently, Keller brings this action for tortious interference and to enjoin Fonseca's continued unlawful activity.

## PARTIES, JURISDICTION, AND VENUE

8. Keller is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 7550 Teague Road, Suite 300, Hanover, Maryland 21076 and is therefore a citizen of the states of Delaware and Maryland.

9. Fonseca is an individual residing and domiciled at 6901 SW 96th Street Pinecrest, FL 33156 and is therefore a citizen of the state of Florida.

10. This Court has personal jurisdiction over Fonseca because Fonseca resides within this District, is employed in this District, and because he engaged in the unlawful conduct alleged herein in this District.

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Keller's causes of action occurred in substantial part in this District.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

### KELLER'S BUSINESS OPERATIONS

13. Keller is a geotechnical specialist contractor that provides solutions to geotechnical challenges throughout the construction industry, including across commercial, institutional, mining, infrastructure, and other markets.

14. Among other areas, Keller operates in the deep foundation construction, earth retention, and ground improvement spaces providing its design-build services, products, and solutions to customers across the country and worldwide.

15. Keller's deep foundation services, which are required whenever weak soils have little capacity to resist an existing load or a change in an existing load and involve the construction of structural elements to transfer loads down to stronger underlying soils or rock, include (among other techniques) auger cast piles, bored piles/drilled shafts, driven cast in-situ piles, driven precast piles, screw piles, macropiles, and micropiles.

16. Keller's earth retention services, which are used to retain earth successfully so that it does not move or shift to any unwanted directions, include (among other techniques) anchors, contiguous pile walls, micropile slide stabilization systems, secant pile walls, and sheet piles.

17. Keller also provides ground improvement services, which can increase the load bearing capacity of the ground, reduce settlement, and improve the engineering properties of existing soils through, among other techniques, rigid inclusions, compaction grouting, pressure grouting, and deep soil mixing.

18. Among other locations, Keller has operations in Florida.

19. Keller has expended significant time, effort, and money to develop its relationships with its customers, to learn their particular business needs, specifications, and requirements; to develop substantial contacts and goodwill with its customers; and to market and sell its products and services to those customers.

20. In addition, to stay competitive, Keller has made a substantial investment in time, effort, and money to develop its confidential and proprietary information, including the names and key contact information of its customers, pricing and usage information, business plans, sales and statistical data, product plans, employee information, and the like.

21. Any misuse of this information would place Keller at a significant competitive disadvantage in the market.

22. Accordingly, Keller has gone to great lengths to maintain the secrecy of its confidential and proprietary information, including but not limited to: (1) restricting access to such information only to certain employees; (2) requiring employees to enter into restrictive covenant agreements; (3) maintaining robust security policies and protocols; and (4) requiring employees to return all information and equipment to Keller upon termination of their employment.

**FONSECA'S EMPLOYMENT WITH KELLER**

23. Fonseca was hired by HJ Foundation Company in or around September 1999.

24. In or around September 2007, Keller acquired HJ Foundation. HJ Foundation continued to operate as HJ Foundation until January 2020, when it merged with all other Keller companies under the Keller name.

25. Fonseca became employed by Keller in or around September 2007 at the time of HJ Foundation's acquisition, and he continued serving as HJ Foundation's President until the company merged and rebranded as Keller in January 2020.

26. Fonseca was employed by Keller at the highest levels of the company, ultimately being named as Senior Vice President.

27. During his employment with Keller, Fonseca was responsible for overseeing the operations in Keller's Florida Region.

28. As a Senior Vice President, Fonseca also was responsible for and involved in Keller's operations and leadership on a national level, including working with senior leaders on the company's overall operations, leadership, safety, and management; working with senior leaders to formulate strategic initiatives to ensure growth and profit for stake holders; and maintaining trusted relationships with employees and customers.

29. In addition, throughout his employment, Fonseca had responsibility for, among other things, developing business strategies and plans; identifying new opportunities, markets, clients and technologies while building client relationships; evaluating opportunities to maximize profitability; estimating; engineering; technical writing; negotiating contracts; conducting site visits and interfacing directly with clients; developing plans and strategies with project teams; improving productivity; monitoring and approving weekly and monthly project and branch

financial reports, forecasts, budgets, and other metrics; and building and leading the Southeast Region.

30. While employed by Keller, Fonseca was introduced to Keller's clients and key contacts.

31. Fonseca benefitted directly from the goodwill, reputation, and name recognition generated by Keller's efforts over the years to develop its business.

**COMPETING COMPANY BERKEL'S BUSINESS OPERATIONS**

32. Berkel is a specialty geotechnical contractor in the deep foundation construction, earth retention, and ground improvement arenas that provides geotechnical construction and specialized foundation and construction services to its clients across the country and in the Caribbean.

33. The company touts itself as being "one of the largest piling contractors in the U.S." and as "the most experienced designer and installer of single-pass, cast-in-place foundation systems in the U.S."

34. According to Berkel's website, the company provides deep foundation work, including auger pressure grouted piles, infinity group piles, drilled displacement/screw piles, limited/remote access, micropiles, energy piles, drilled shafts, driven piles, and rock anchors/tie-downs.

35. According to Berkel's website, Berkel also provides sheeting and shoring, including sheet piles, soldier piles, tie-backs, underpinning, bracing, secant and tangent walls, soil nails, and façade retention, as well as ground improvement work, such as rigid inclusions, compaction grouting, pressure grouting, and deep soil mixing.

36. Berkel's engineering group, which includes structural and geotechnical engineers, offers design assistance, as well as full designs on the company's products and services.

37. Berkel operates and/or maintains projects in locations nationwide.

38. Berkel provides services equivalent or similar to those that Keller provides and is a direct competitor of Keller.

**FONSECA'S RESIGNATION**

39. On or about September 27, 2024, Fonseca's unexpectedly resigned from his employment with Keller.

40. Keller subsequently learned that Fonseca had accepted a job as Berkel's Senior Vice President working for Berkel in Miami.

41. Fonseca works for Berkel doing the exact same job in the exact same market area as he did while employed by Keller.

42. Upon information and belief, Fonseca joined Berkel to help the company develop its presence in Miami and to expand its operations in the market area.

43. To that end, Fonseca solicited or attempted to solicit Keller employees from his business unit to come work for Berkel, including, upon information and belief, Andres Baquerizo, Nicholas Feldt, Elison Garcia, Jorge Malave, and Ricardo Picayo.

44. Of these employees, each has recently resigned their employment with Keller and accepted positions with Berkel, resulting in a mass resignation of Keller's workforce in the Miami area.

45. Each of these defecting employees was a member of Fonseca's business unit in Keller's Florida Region, and each reported to or otherwise worked with Fonseca during his time as Keller's Senior Vice President.

**FONSECA'S PRE-RESIGNATION ACTIVITIES**

46. Approximately one week prior to his resignation from Keller, Fonseca was included on communications with Keller's Human Resources Department regarding certain confidential information relating to its employees, including copies of an employment contract relating to certain Keller employees with whom he worked in the Miami area.

47. This confidential information included information relating to then-Keller employee Andres Baquerizo.

48. Upon information and belief, Fonseca used the confidential information relating to Keller's employees that he obtained during his employment to his own benefit and to the detriment of Keller while he was still employed by Keller and for the purposes of unfairly competing against Keller.

49. In addition, in the days immediately preceding his resignation from Keller, Fonseca made multiple phone calls to Keller employees about, upon information and belief, leaving their employment with Keller.

50. Fonseca called Ricardo Picayo on September 10, September 12 (three times), September 18, and September 23, all in the days leading up to Picayo's resignation from Keller on September 25.

51. Fonseca also called Jorge Malave on September 20, September 23 (two times), September 24, and September 25, all in the days leading up to Malave's resignation from Keller on September 27.

52. Upon information and belief, Fonseca solicited other Keller employees from his business unit to come work for Berkel began before his employment with Keller ended.

53. Upon information and belief, Fonseca has called upon, solicited, or provided Keller clients or customers, or prospective clients or customers, with products or services that compete with the products or services offered by Keller, including customers and prospective customers with whom he dealt or whose identity he learned while employed by Keller.

54. Upon information and belief, Fonseca is using and/or disclosing Keller's confidential and proprietary information to unfairly assist Berkel in developing and growing its market presence in direct competition with Keller.

## COUNT I
## Breach of Duty of Loyalty

55. Keller repeats and incorporates by reference each of the allegations set forth in the prior paragraphs as if fully set forth herein.

56. As an employee of Keller, Fonseca owed Keller a duty of loyalty not to engage in disloyal acts in anticipation of his future competition, such as using confidential information he acquired during the course of his employment or soliciting other employees prior to the end of his employment.

57. While still employed by Keller, Fonseca violated his duty of loyalty by using confidential information he acquired during the course of his employment, including but not limited to information about Keller's employees, by soliciting Keller employees in his business unit to leave their employment and work for a competing company, and by concealing this plan in direct violation of his obligations to Keller.

58. Fonseca's actions intentionally placed his interests and the interests of others ahead of Keller.

59. Fonseca's actions lead to the mass resignation of Keller's workforce in the Miami area.

60. As a direct and proximate result of Fonseca's actions, Keller has sustained damages.

61. The conduct of Fonseca, as alleged herein, was intentional, malicious, and demonstrates a complete indifference to or a conscious disregard for the rights of Keller.

## COUNT II
### Tortious Interference with Business Relationships

62. Keller repeats and incorporates by reference each of the allegations set forth in the prior paragraphs as if fully set forth herein.

63. Keller has existing business relationships with its employees.

64. Keller had a legitimate expectancy that its relationships with its employees would continue, as many of those relationships are long-standing.

65. Fonseca was aware of Keller's business relationships with its employees, including with Andres Baquerizo, Nicholas Feldt, Elison Garcia, Jorge Malave, and Ricardo Picayo as a result of Fonseca's former employment with Keller.

66. Fonseca has intentionally and unjustifiably interfered with, and continues to intentionally and unjustifiably interfere with, Keller's business relationships with its employees.

67. Fonseca intentionally engaged in these actions with the purposeful, malicious, and unjustifiable intent to interfere with Keller's business relationships, injure Keller, and damage Keller's business and reputation.

68. As a direct and proximate result of Fonseca's intentional and unjustified interference with Keller's business relationships, Keller has sustained damages.

69. The conduct of Fonseca, as alleged herein, was intentional, malicious, and demonstrates a complete indifference to or a conscious disregard for the rights of Keller.

## REQUEST FOR RELIEF

WHEREFORE, Keller demands and prays for relief against Frank Fonseca as follows:

(a)   a temporary, preliminary, and permanent injunction enjoining Fonseca from interfering with Keller's business relationships with its employees;

(b)   that Keller be relieved of any obligation to post an injunction bond;

(c)   actual, compensatory and punitive damages in an amount to be proven at trial;

(d)   an award of reasonable attorneys' fees and costs incurred in this action;

(e)   pre- and post-judgment interest at the maximum rate permitted by law; and

(f)   such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: November 8, 2024.

Respectfully submitted,

*/s/ Lindsay M. Massillon*
Lindsay M. Massillon
Florida Bar No. 92098
lmassillon@fisherphillips.com
**FISHER & PHILLIPS, LLP**
201 E. Las Olas Blvd., Suite 1700
Fort Lauderdale, Florida 33301
Telephone: 954-525-4800
Facsimile:  954-525-8739

Benton N. Wood, B.C.S.
Florida Bar No. 957275
bwood@fisherphillips.com
**FISHER & PHILLIPS, LLP**
200 S. Orange Avenue
Suite 1100
Orlando, FL 32801
Telephone: (407) 541-0851
Facsimile: (407) 541-0887

11

## **VERIFICATION**

I declare and verify under penalty of perjury under the laws of the United States of America and the State of __MO__ that the foregoing is true and correct.

Executed on: __10/23/24__

By: __Curtis Cook__

Title: __Executive Vice President__